FILED

2014 Sep-15  AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MYRA NICOLE EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:13-cv-01276-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Myra Nicole Evans brings this action, through counsel, pursuant to 42 U.S.C. §

405(g), seeking review of the final decision of the Acting Commissioner of Social Security

("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income Benefits ("SSI").  (Doc.[1] 1).  The case has been assigned to the

undersigned United States Magistrate Judge pursuant to this court's general order of reference

dated January 14, 2013.  The parties have consented to the jurisdiction of this court for

disposition of the matter.  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the

record and the relevant law, the undersigned finds that the Commissioner's decision is due to be

affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI on January 19, 2012, alleging disability beginning June 28, 2010.  (R. 20, 133, 135).[2]  Her claims were denied initially.  (*Id*.)  Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 22, 2011.  (R. 39).  Plaintiff was represented by counsel at the hearing.  (*Id*.)  The ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act.  (R. 20).  He also found that she had a residual functional capacity ("RFC") to perform light  work with some limitations.  (R. 24).  In light of these findings, the ALJ issued a decision on March 30, 2012, denying Plaintiff's request for DIB and SSI.  (*Id*. at 20-34).

Plaintiff requested the Appeals Council review the ALJ's decision.  She submitted additional argument on July 3, 2012.  (R. 214-17).  The Appeals Council declined Plaintiff's request for review on May 9, 2013.  (R. 1).  Therefore, the ALJ's decision represents the final decision of the Commissioner.  (*Id*.)  Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied.  (Doc. 1).

# II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also*

---

[2]Citations to (R. ___) are to the page of the administrative record, which is encompassed within Docs. 7-1 to 7-9.

*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). As just noted, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

A.     **The Facts**

        1.     **Background**

        At the time of the decision in this case, Plaintiff was forty years old with a high school education. (R. 164, 166). She has past relevant work as a cashier and salesperson. (*Id*. at 33). The ALJ determined she is able to perform her past work as a cashier. (*Id*.) She has not worked since June 28, 2010, the alleged onset date. (*Id*. at 22).

### 2.     ALJ Findings

The ALJ found that Plaintiff had severe physical impairments of arthritis, back pain, generalized anxiety disorder, adjustment disorder, and major depressive disorder.  (R. 22-23).  He also found that Plaintiff had no impairment or combination of impairments that met or medically equaled any listing.  (*Id*.)  He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work with some postural limitations that are not at issue in this matter, and that she (1) could not work around unprotected heights or dangerous or moving machinery, (2) could maintain attention and concentration up to two hours at a time if all customary breaks were given, (3) could understand, remember, and carry out simple work instructions, (4) should have only casual, non-confrontational contact with the public, co-workers, and supervisors, and (5) could handle changes in the workplace if they are introduced gradually and are well explained.  (R. 24).  As noted above, the ALJ determined that Plaintiff could return to her past relevant work as a cashier.  (*Id*. at 33).  He also concluded, based on vocational expert ("VE") testimony, that there was other work in significant numbers that Plaintiff could perform.  (*Id*. at 33-34, 67-68).  His final conclusion was that Plaintiff was not disabled.  (*Id*. at 34).

### B.     Analysis

Plaintiff argues the ALJ erred in that he rejected a treating therapist's opinion in favor of a vocationally inadequate assessment by a non-examining reviewing physician.  (Doc. 11 at 5).  As a part of this challenge, Plaintiff asserts that the ALJ erred in (1) giving dispositive weight to the opinion of a non-examining reviewing physician, (2) applying an erroneous hypothetical to the VE, (3) rejecting the opinion of a treating mental health therapist, and (4) failing to develop a

record by obtaining acceptable medical input before deriving the RFC.  The Commissioner responds that the ALJ's evaluation of the evidence and findings are supported by substantial evidence.  (Doc. 12 at 4-21).

As noted above, the ALJ found that Plaintiff was capable of performing light work with certain limitations.  (R. 24).  Plaintiff's over-arching challenge to that determination is that this conclusion is wrong because her RFC is not based on medical opinion evidence.  (Doc. 11 at 6-8).

An RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis ... [which] means 8 hours a day for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  It "involves determining the claimant's ability to do work in spite of his [or her] impairments in consideration of all relevant evidence."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  It is the responsibility of the Commissioner to determine a claimant's RFC.  *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not doctors").

It is also well-settled that Plaintiff bears the burden of proving that she is disabled.  *See* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility.  You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence, without redaction, showing

how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

### 1.    Generally

#### a.    Medical History

The starting point in this case should be what the evidence in the record shows. After summarizing the relevant evidence, the court will address Plaintiff's individual claims.

Plaintiff first presented with complaints of anxiety and depression on July 6, 2010, during an initial visit to the Oasis Women's Counseling Center. (R. 26, 289). She stated that she was not taking any medications and had been treated previously as an inpatient as a teenager. (*Id.*) She also stated that her depression was related to family relationship and work issues, including that she was arrested for negotiating forged checks and that she was suspended from work for stealing money. (R. 26, 290). Her intake evaluation noted that she appeared depressed; her appearance, speech and concentration were normal; and she was restless. (*Id.*) She reported no sleep disturbances, but had a decreased appetite. (*Id.*) She was diagnosed with an adjustment disorder with depressed mood. She was assessed with a Global Assessment of Functioning ("GAF") score of 55.[3] (R. 26, 291). She was scheduled for a return appointment on July 30, 2010. (*Id.*)

---

[3]A GAF between 51 and 60 indicates "**[m]oderate symptoms** (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peers or co-workers)." *See* http://gafscore.com (last visited September 11, 2014) (bold in original).

Plaintiff was seen on July 30, 2010, by Lisa Allison, a licensed counselor.  (R. 27, 304).
Plaintiff stated that she was staying busy and that was helping her stress level.  She also talked
with Allison about issues with her partner and her mother.  (*Id.*)

Plaintiff's next two sessions were cancelled when she either did not show or was late.  (R.
27, 302-03).  During her September 15, 2010 session, she discussed her emotions regarding her
father and the loss of her mother.  She reported that she had no motivation to get out and do
anything.  As "homework," Allison told her to write a letter to her deceased mother.  (R. 300).
Plaintiff's September 29, 2010 appointment was cancelled.  (R. 299).

Plaintiff presented to Dr. Danika Hickman on September 23, 2010, with complaints of
anxiety and stress at work.  Hickman prescribed Valium and Paxil for Plaintiff.  (R. 27, 259).

Plaintiff returned to Allison on October 6, 2010.  She complained about her father calling
her and how that upset her.[4]  She was also troubled because her former co-workers and
supervisor had been trying to contact her, but she did not want to talk with them.  She told
Allison that she was doing volunteer work, which allowed her to "giv[e] back to the community."
(R. 297).  Allison's assessment of Plaintiff was that she was making good progress.  (*Id.*)  She
similarly noted Plaintiff's "good progress" in her next session despite Plaintiff having to attend a
funeral for her partner's father.  (R. 295).  After arriving later for her next appointment, which
resulted in it being cancelled, Plaintiff met with Allison on December 1, 2010.  Plaintiff stated
she was "stressed" about the upcoming Christmas holidays because she did not have the financial
resources to "to provide the standard of gifts that she ha[d] in the past."  (R. 293).

---

[4]Plaintiff's father purportedly was physically abusive to her mother.  (R. 290).

7

Plaintiff's next three counseling sessions were canceled.  (R. 355-57).  She saw Allison

on February 2, 2011.  (R. 354).  Plaintiff stated that she was depressed and lacked focus because

she had been out of medication for several weeks.  (*Id*.)  She also stated that her "lack of

significant income [was] becoming overwhelming and that she often feels like she is barely

making it."  (*Id*.)  Allison's "WHO" scoring of Plaintiff indicated that she was improving, but not

significantly.  (*Id*.)  Plaintiff's next visit, February 21, 2011, was unremarkable.  (R. 353).

Plaintiff's March visit was cancelled by the counseling service.  (R. 352).  Her final visit on June

15, 2011, with another counselor, indicated that she was more anxious than depressed, having to

deal with family issues and an upcoming court date in her criminal case.  (R. 394).  Plaintiff also

stated that she was more aware of depressive symptoms and that she tends to sleep too much

when she is depressed.  Plaintiff and the counselor discussed strategies to help her cope with her

symptoms.  (*Id*.)

     Plaintiff went to see Dr. Hickman on August 4, 2011, for a routine follow-up

appointment.  Hickman noted that Plaintiff informed her that her daughter had run away, but had

returned.  Otherwise, the visit was unremarkable.  Plaintiff's medications were refilled.  (R. 396).

### b.    Relevant Evaluations

     H. Randall Griffith, Ph.D., evaluated Plaintiff on March 9, 2011, at the request of the

Social Security Administration.  (R. 314).  He found that (1) Plaintiff was oriented as to person,

place and time, (2) her speech was fluent, (3) her affect was normal and reactive, (4) her

concentration and memory were intact, (4) her judgment and insight appeared fair, and (5) she

was thought to have average to high average intelligence.  (R. 29, 315-16).  He further found that

she had "major depressive disorder with mild to moderate symptoms, generalized anxiety

disorder and polysubstance abuse by history."  (*Id*.)  He assessed her as follows:

> Despite her impairments, Ms. Evans appears to understand and be able to carry
> out instructions.  Her task persistence appears good, although she may have some
> problems attending and recalling information.  There was no behavioral evidence
> from this evaluation to suggest that she would not respond appropriately to
> supervisors and coworkers.  Her ability to tolerate work stress and changes
> appeared fair.

(R. 317).

Robert Estock, M.D., completed a *Psychiatric Review Technique* form concerning

Plaintiff, finding that her impairments – major depressive disorder and general anxiety disorder –

"would cause only mild limitations in her ability to maintain social functioning, concentration,

persistence and pace."  (R. 30, 318, 328).  In the *Mental Residual Functional Capacity*

*Assessment* form, he found that despite Plaintiff's impairments, (1) she would still be capable of

understanding, remembering and carrying out simple instructions over an eight-hour workday if

all customary breaks were provided; (2) she could concentrate for two-hour periods; (3) she

could handle casual and non-confrontational contact with coworkers, supervisors and the general

public; and (4) she could adapt to changes in the work place provided they were introduced

slowly.  (R. 342).

On April 1, 2011, Allison completed a *Supplemental Questionnaire* form provided by

Plaintiff's counsel.  Therein, she reported that Plaintiff would have "marked" difficulties with

performing her activities of daily living, maintaining social functioning, responding to customary

work pressures, and responding appropriately to co-workers and supervision in a work setting.

(R. 372).  She also stated that Plaintiff would have "moderate" difficulties with maintaining

9

concentration, persistent and pace, which would result in frequent failures in completing tasks timely; with understanding, remembering and carrying out work instructions; with performing simple tasks in a work setting; and, with performing repetitive tasks in a work setting.  (R. 373-74).

### 2.    Giving dispositive weight to the opinion of a non-examining reviewing physician

Plaintiff's first complaint is that the ALJ erred in giving dispositive weight to the opinion of Dr. Estock.  (Doc. 11 at 10).  She argues that it was error to "verbatim adopt[] his findings which were in any event non[-]specific, subjective and not vocationally interpretable."  (*Id*.)  In support of this argument, she states that the opinion of a reviewing physician is entitled to little weight.  (*Id*. at 7 (citing *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990)).  The Commissioner retorts that "the regulations governing the evaluation of medical sources and state agency physicians [changed] after *Swindle* was decided."  (Doc. 12 at 12 (citing 20 C.F.R. §§ 1527(c), (e); 416.927(c), (e); 65 Fed. Reg. 11866, 11867-68 (March 7, 2000), 56 Fed. Reg. 36932, 36936-3736953, 36969 (August 2, 1991)).  The Commissioner goes on to state that "the Eleventh Circuit has held that 'new regulations at variance with prior judicial precedent are upheld unless they exceed the [agency's] authority or are arbitrary or capricious.'"  (Doc. 12 at 12 (citing *Satellite Broad. & Communications Ass'n of Am. v. Oman*, 17 F.3d 344, 348, n.8 (11th Cir. 1994) (quotations omitted); *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 982 (2005) (upholding an agency's interpretation of a statute over prior court interpretation)).  Additionally, "[t]he Commissioner has also issued a ruling explaining that '[i]n appropriate circumstances, opinions from State agency medical and psychological consultants

and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.' SSR 96–6p, 1996 WL 374180, *3, (S.S.A.)."
*Mitchell v. Colvin*, 2014 WL 1513274, *6 (N.D. Ala. 2014).

The one thing the ALJ must do is explain the weight given to his findings.  *Mitchell*, 2014 WL 1513274, *6.  The ALJ did exactly what was required in this instance.  He stated he gave the findings of Estock substantial weight because

> Dr. Estock is deemed by regulation to be a "highly qualified expert in Social Security disability evaluation....  His findings are uncontradicted by other *objective* medical evidence, he had access to [Plaintiff's] entire medical record, and his findings and opinions are consistent with those of Dr. H. Randall Griffith, an examining source.  As such, they are entitled to substantial weight.

(R. 31).  Absent an adequate challenge to the foregoing analysis and conclusion of the ALJ, Plaintiff's first assertion is without merit.

### 3.       Applying an erroneous hypothetical to the VE

Plaintiff next argues that the hypothetical that was presented to the VE did not match the mental restrictions set forth in the RFC.  (Doc. 11 at 6-7, 10).  Specifically, she argues that Estock opined that Plaintiff's contact with coworkers, supervisors and the general public should be casual and non-confrontational.  (*Id*. at 6 (citing R. 342)).  However, the hypothetical posed to the VE provided that "[c]ontact with the general public, coworkers and supervisors should be casual.  Supervision should be non-confrontational and supportive."  (*Id*. at 7 (citing R. 67)).  She concludes that the ALJ's failure to include the limitation that "contact with coworkers or the public should be non-confrontational" is error.  (*Id*.)  The Commissioner responds that "while the ALJ's hypothetical did not expressly include this limitation, the ALJ's decision indicates he did not base his finding that Plaintiff could return to her past relevant work on this series of

questioning, but rather on his own comparison of Plaintiff's RFC with the VE's description of her past relevant work as a cashier as light, unskilled work." (Doc. 12 at 18 (citing R. 33, 67)).

"In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). In *Dial v. Comm'r of Soc. Sec.*, 403 F. App'x 420, 421 (11th Cir. 2010), the court fount that where "the ALJ failed to include all of Dial's employment limitations in the hypothetical questions posed to the VE, ... the VE's testimony did not constitute substantial evidence upon which the ALJ could rely." However, such an error may be harmless. *See Dial*, 403 F. App'x at 421 (stating that "we cannot say the ALJ's error was harmless" where the ALJ relied only on the faulty testimony of the VE).

To begin, it is clear that the hypothetical question posed to the VE herein was not factually correct.[5] Next, it is also clear that the ALJ specifically based his finding that Plaintiff could do her past job as a cashier on the testimony of the VE that responded to the flawed question. In this instance, the court must find error in that the VE's testimony is premised on a fundamental factual flaw and because it undergirds the ALJ's legal determination that Plaintiff can perform past relevant work as a cashier.

To the extent the Commissioner argues that the ALJ's decision is premised on his own comparison of her RFC with the VE's description of her past relevant work as a cashier as light, unskilled work, the court is not convinced. In finding 5, the ALJ did find that Plaintiff could

---

[5]The court does note, however, that in framing the incorrect question, the ALJ did refer the VE and the parties to the *Mental Residual Functional Capacity Assessment* form (Ex. 9F) that correctly states the limitation. (R. 342).

perform light work if, *inter alia*, she had "only casual, non-confrontational contact with the public, co-workers and supervisors." (R. 24). Thereafter, he wrote as follows:

> Dr. Julia A. Russell, the vocational expert at the hearing, described [Plaintiff's] past relevant work as a cashier as unskilled work performed a light exertional level. The demands of [Plaintiff's] past relevant work as a cashier, as testified to by Dr. Russell, are within the parameters of the residual functional capacity as determined herein. Accordingly, the undersigned finds that [Plaintiff] can perform her past relevant work as a cashier. In comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, Dr. Russell testified that [Plaintiff] would be able to perform this work as it is actually and generally performed.

(R. 33). The ALJ's RFC did include the relevant limitation, but it did not include a conclusion that she could perform her past work as a cashier as suggested by the Commissioner. That conclusion is derived from the testimony of Russell as quoted above. Thus, there is no support for the contention that there is substantial evidence that Plaintiff could perform her past relevant work as a cashier with the RFC limitations articulated by the ALJ.

The next question is whether this error is harmless. The Commissioner argues that it is because the ALJ made the alternate finding that Plaintiff could perform other work. (Doc. 12 at 19 (citing R. 33-34)). Specifically, she asserts as follows:

> Although the hypothetical questions did not specify contact with co-workers and the public should be both casual and non-confrontational, the descriptions of these positions in the <u>Dictionary of Occupational Titles</u> all fail to show job requirements inconsistent with the social limitations included in Plaintiff's RFC. <u>See, e.g.</u>, U.S. Dep't of Labor, <u>Dictionary of Occupational Titles</u> (<u>DOT</u>) § 302.685-010, 1991 WL 672657 (G.P.O.) (laundry worker, domestic); § 529.686-014, § 537.687-034, 1991 WL 683994 (G.P.O.) (sorter); 753.587-010, 1991 WL 680340 (G.P.O.) (sorter); § 754.685-014, 1991 WL 680374 (G.P.O.) (assembly - machine tender); § 769.687-042, 1991 WL 680573 (G.P.O.) (sorter II) (4th ed. 1991). Based on this testimony, the ALJ noted Plaintiff also could perform other work.

13

(Doc. 12 at 20 (citing R. 33-34)).  The court agrees.  Because of this alternate finding, it is evident that Plaintiff can perform other work.  None of these jobs include requirements that are inconsistent with the social limitations the ALJ determined were applicable to the Plaintiff and that were articulated in the RFC.  Plaintiff has not demonstrated otherwise.  Accordingly, any error is harmless.

To the extent the Commissioner also argues that Plaintiff is not entitled to any relief because she has not demonstrated that she is disabled (doc. 12 at 21), the court agrees.  As just determined, and found by the ALJ, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (R.34).  Therefore, she is "not disabled."[6]  (*Id*.)

### 4.      Rejecting the opinion of the treating mental health therapist

Plaintiff next argues the ALJ erred in rejecting the opinion of Plaintiff's counselor, Ms. Allison.  (Doc. 11 at 8-9, 10).  Plaintiff asserts that the ALJ improperly rejected Allison's opinion even though she was in the best position to assess Plaintiff's functioning.  (Doc.11 at 8).  The Commissioner responds that the decision shows the ALJ considered the relevant factors and properly accorded no weight to Allison's opinion.  (Doc. 12 at 14 (citing R. 31)).

---

[6]As a part of this challenge, Plaintiff also argues that the cashier position appears "to be an extremely poor fit for" her. (Doc. 11 at 7).  She premises this argument on the evidence in the record including that she "has a history of impulsive and law breaking decisions and would likely be at risk to mismanage financial benefits." (*Id*. (citing R. 317)).  Because the court finds the ALJ's alternative finding to be supported by substantial evidence, this claim is no longer an issue as the listed "other work" does not involve financial matters.  Additionally, once the Commissioner produces evidence that there is other work available in significant numbers in the national economy that Plaintiff has the capacity to perform, she must prove that she is unable to perform the jobs that the Commissioner lists. *Doughty v. Apfei*, 245 F.3d 1274, 1278 , n.2 (11th Cir. 2001).  Plaintiff has not met her burden as to this aspect of her challenge.

Regarding Allison, the ALJ gave "[g]reat weight ... to [her] general _findings_," which related to the time of her treatment of Plaintiff.  (R 31 (underlining in original)).  He noted:

> These findings are based upon a treating relationship of roughly a one-year period.  As a counselor, Ms. Allison had the opportunity to observe [Plaintiff] directly during her counseling sessions.  Her finding are internally consistent as well as consistent with the evidence as a whole.  As they are well supported and largely uncontradicted by other objective evidence, they are entitled to controlling weight.

(_Id._)  He also considered her opinions detailed in the completed April 2011 questionnaire, but gave them "no weight."  (_Id._)  In the questionnaire, Allison circled responses on the form indicating that Plaintiff had "marked" limitations in her activities of daily living, social functioning, responding to customary work pressures, and responding appropriately to supervision or co-workers in a work setting.  (R. 372-73).  She also circled responses indicating that Plaintiff had "moderate" limitations in concentration, persistence or pace; in understanding, carrying out and remembering instructions in a work setting; and in performing simple or repetitive tasks in a work setting.  (_Id._)  The ALJ gave "no weight" to these opinions because they were "completely inconsistent with her own findings during her counseling sessions, where she indicated that [Plaintiff] was doing well" and the notes demonstrating that Plaintiff had a GAF score of 55 in July 2010.  (R. 31).  He also stated that the clinical notes indicated Plaintiff was steadily improving.  (_Id._)  By way of example, he noted:

> When Ms. Allison completed this Supplemental Questionnaire, she had not seen [Plaintiff] in almost two months, and indicated that [Plaintiff] had 'moderate' or 'marked' limitations in multiple areas of functioning.  However, on her own treatment notes, Ms. Allison indicated that [Plaintiff's] concentration and memory were normal, and that her thought processes were coherent....  Ms. Allison's opinions on this form as to [Plaintiff's] capabilities are in no way consistent with her own treatment notes.  As such, her _opinions_ are given no weight.

15

(*Id*. (underlining in original)).  In this instance, the ALJ did exactly what was required in evaluating and weighing opinion evidence.  He considered the treating relationship, the length of the same, the examiner's specialization, the supportability of the opinion, and the consistency of the opinion with the record as a whole.  *See* 20 C.F.R. §§ 404.1527, 416.927.  Plaintiff is entitled to no relief on this challenge.

> **5.    Failing to develop a record by obtaining acceptable medical input before deriving Plaintiff's residual functional capacity**

Plaintiff also asserts that the ALJ should have obtained an additional consultative examination or medical expert opinion for clarification of her situation (see 20 C.F.R. §§ 404.1519a, 416.919a).[7]  (Doc. 11 at 9-10).  The court disagrees.  Plaintiff argues that "[b]ased on the passage of time as well as the need for clarification, the ALJ could have developed the record to obtain an MSO based on all of the evidence...."  (*Id*. at 9).  She also argues that the ALJ had a

---

[7]The regulations provide:

(b) *Situations that may require a consultative examination*.  We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

duty to develop the record and additional medical input and development was necessary.  (*Id*. at

10).  The Commissioner retorts that Plaintiff is ignoring the fact that the record includes the

consultative examination of Dr. Griffith.  (Doc. 12 at 14).

The applicable considerations were recently articulated by United States District Judge

Virginia Emerson Hopkins:

> The ALJ's duty to develop the record encompasses an obligation to order a
> consultative evaluation "when the evidence as a whole is insufficient to allow [the
> Commissioner] to make a determination or decision on [the] claim."  20 C.F.R §
> 404.1519a(b).  When the record does contain sufficient evidence to make an
> informed decision, the ALJ is not required to order a consultative examination.
> *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) ( "[T]he [ALJ] is
> not required to order a consultative examination unless the record establishes that
> such an examination is necessary to enable the [ALJ] to render a decision." (citing
> *Ford v. Secretary of Health & Human Servs*., 659 F.2d 66, 69 (5th Cir. 1981))).
> Sufficient evidence does not mean "absolute certainty" regarding a claimant's
> condition; the Social Security Act "requires only substantial evidence."  *Id*. at
> 1210.

*Rollins v. Colvin*, 2014 WL 3689787, *4 (N.D. Ala. July 22, 2014).

The record in this case includes Griffith's consultative examination.  The ALJ discussed,

analyzed, evaluated, and relied upon the opinion of Dr. Griffith.  (R. 29-30).  He concluded, in

relevant part, "that there was no evidence to suggest that [Plaintiff] would have any problems

responding appropriately to supervisors or co-workers, and that her ability to tolerate work stress

and change appeared fair."  (*Id*. at 30).  Plaintiff has failed to show why this record evidence is

insufficient to support the determination of the ALJ.  Additionally, Griffith's opinion is

consistent with and supported by Dr. Estock's assessment that Plaintiff was "capable of

understanding, remembering and carrying out simple instructions over an eight-hour workday if

all customary breaks were provided" and "that she would be able to handle casual and non-

confrontational contact with the public, co-workers and supervisors." (R. 30). Accordingly, the court finds that the record is sufficient to support the ALJ's decision. Plaintiff has not demonstrated a need for an additional consultative examination.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**. An appropriate order will be entered separately.

**DONE**, this the 15th day of September, 2014.

**JOHN E. OTT**
Chief United States Magistrate Judge